IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRUCE J. COOPERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 00-JEO-0208-S |
| ) | |
| ABSCO FIREPLACES, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ENTERED**

DEC 2 0 2001

## MEMORANDUM OPINION

In this action, the plaintiff, Bruce J. Cooperman (hereinafter "the plaintiff" or "Cooperman"), a former employee of the defendant, ABSCO Fireplaces, Inc. (hereinafter "the defendant" or "ABSCO"), asserts that he was the victim of age discrimination by ABSCO in violation of the Alabama Age Discrimination in Employment Act (hereinafter "AADEA"); that he has not received overtime compensation and benefits due him in violation of the Fair Labor Standards Act (hereinafter "FLSA"); and that he has been subjected to intentional infliction of emotional distress by the defendant. The plaintiff's complaint also alleges violations of the Employee Retirement Income Security Act (hereinafter "ERISA") and the Consolidate Omnibus Budget Reconciliation Act of 1985 (hereinafter "COBRA"); but, both claims have been previously dismissed by this court. ABSCO has filed a motion for summary judgment on all the remaining claims. Upon due consideration, the court finds that the motion is due to be granted and the case dismissed with prejudice.

## I. BACKGROUND[1]

### A. Age Discrimination Claim

Cooperman was hired by John Galbreath, Jr., Vice-President of ABSCO in July 1999 as an outside salesman when he was forty-nine years old. (Cooperman Deposition (hereinafter "Cooperman")[2] at 63). Cooperman's responsibilities included calling on customers, distributing catalogs, answering questions about ABSCO products, and taking orders from new customers. (Cooperman at 32-33, 74). He traveled in Alabama, Mississippi, and Tennessee.

When he was hired, Cooperman was provided with materials that dealt with the products sold by ABSCO. These materials included a catalog, a CD with technical information on fireplaces, and documents from four different vendors. (Cooperman at 64-66). Cooperman also attended vendor seminars conducted by ABSCO that provided information about its products.

On November 22, 1999, Cooperman and six other ABSCO personnel were given an unannounced product knowledge test. (Cooperman at 79-81). Included in the group was the customer service representative (Cindy Rigsby), sales persons (Bob Carter, Cooperman, and Lynn Hall), a lab technician (Jeff Ray), and one other person (Nan Galbreath). (*Id.* at 80). John Galbreath gave the test because a factory representative complained that Cooperman and Hill "were not attentive in the [training] meeting and that it was a waste of their money to come to Birmingham" to do the training. (Galbreath Deposition (hereinafter "Galbreath")[3] at 37).

---

[1] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[2] This deposition is found at document 16, exhibit 1.

[3] This deposition is found at document 16, exhibit 2.

Galbreath decided the only way to test the accuracy of this comment was to give an exam. (*Id.*). He was not satisfied with Cooperman's performance on the test. Galbreath reviewed the answers to the test with the sales people and gave Cooperman a copy of the test to study. (Cooperman at 82-84).

On December 10, 1999, a second product test was given to everyone again.[4] (Cooperman at 86). This test was given in the form of a Power Point presentation with the employees filling in a blank answer sheet. (*Id.* at 86-87). Cooperman received a score of 25⅓, which was the lowest score of all the sales people. (*Id.* & Ex. 7). Lynn Hall, who was hired on the same day as Cooperman, received a score of 72 on this test. (Cooperman at 90-91). The remainder of the scores were in the eighty and ninety percentiles. (Doc. 16, Ex. 8).

On December 13, 1999, Cooperman received a written warning from Galbreath regarding his product knowledge. (Cooperman at 95-96; Doc. 16, Ex. 9). This warning informed Cooperman that he would be tested again and if his answers did not substantially improve, his position with ABSCO would be terminated. (*Id*). Cooperman responded that he would do better on product knowledge, that he needed to study more, and that he recognized the safety issues involved. (*Id.* at 96 & Ex. 9). At the deposition, Cooperman stated that it was "really a problem in recognition more than it was in knowledge." (*Id.* at 96-97).

On December 17, 1999, Cooperman was given a third product knowledge test. (Cooperman at 98). This test showed both catalog photos, as well as digital photos of the actual product set-ups in the stores. Cooperman scored 14 out of seventy, which was 20%, a score

---

[4] Counsel for the plaintiff asserts that the second test was "unannounced." (Doc. 21 at 3). The testimony, however, was that the staff did "[n]ot know the date. Everybody knew that there would be a secondary [sic] test because I was not happy with the results of the first one." (Galbreath at 44). The plaintiff stated that he did not recall whether he was told there would be a second test. (Cooperman at 85-86). Regardless, this distinction is not significant.

lower than the score he received on the second test. (*Id.* at 99). Cooperman states that he did poorly on the third test because he had a migraine headache on the day the test was given and that he had informed Galbreath about his headache on the day of the test. (*Id.* at 99-100).[5] After the test, Cooperman went to the doctor and received an injection for the pain. (*Id.* at 104-05).

On December 29, 1999, Cooperman was given a notification of termination from ABSCO. (Cooperman at 105). The reasons cited for termination were "poor product knowledge after repeated testing and a signed written warning" and "poor safety knowledge after testing and a signed written warning." (Cooperman at Ex. 12). No new outside salespeople have been hired since Cooperman was terminated. In fact, Hall was terminated on January 13, 2000, due to a reduction in force and his being the newest employee. (Doc. 16, Ex. 13).

### B. FLSA Claims

Cooperman was hired as a salary employee. During his employment with ABSCO, Cooperman *believed* that he requested to be off work on Labor Day, 1999. (Cooperman at 111-12) (italics added). He did not work on this day and his pay for this day was deducted from his paycheck. (*Id.* at 112). Cooperman discussed the pay deduction with Galbreath. (*Id.*). Galbreath suggested to Cooperman that he fill out an expense report and turn it in showing that he worked on Labor Day. Galbreath further told Cooperman not to tell his (Galbreath's) mother that he was paid. (*Id.*). He was then paid for the day.

ABSCO paid Cooperman only for those days of his final week of work which he actually worked. (Cooperman at 113). He was not paid for the portion of the week after his termination.

---

[5] Galbreath testified that Cooperman did not mention his headache to him on the day the test was given, only later on the day he was fired. (Galbreath at 69). The court has accepted the plaintiff's testimony for consideration of the present motion.

4

(*Id.* at 113-14).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-323; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which

6

the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen,* 121 F.3d at 643.

### III. THE FLSA ANALYSIS

While the FLSA sets forth minimum wage and maximum hour requirements, *see* 29 U.S.C. §§ 206-207 (2001), these requirements do not apply to "any employee employed . . . in the capacity of outside salesman. . . . " 29 U.S.C. § 213(a)(1)(2001). An outside employee is defined as

> any employee...[w]ho is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business in...[m]aking sales...and...[w]hose hours of work of a nature other than that [of making sales] do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer....

29 C.F.R. § 541.5 (2001). Both parties agree that Cooperman was hired as an outside salesperson to be paid on a salary basis. (*See* Cooperman's Brief (Doc. 21) at 2, 15; ABSCO's Brief (Doc. 15) at 2). Therefore, the minimum wage and maximum hour requirements of the FLSA generally do not apply to this employment relationship.

Cooperman's FLSA claims, however, involve two separate instances in which ABSCO

7

deducted pay from his salary. In the first instance, ABSCO deducted eight hours of pay from the paycheck covering Labor Day, 1999. However, when Cooperman approached Galbreath about this deduction, he was reimbursed for the amount deducted. (Cooperman at 112). In the second instance, ABSCO only paid Cooperman for the days he actually worked during the final week of his employment. (Cooperman at 113).

Cooperman claims that he "was hired as a salaried employee[] only to be changed to an hourly employee when it benefitted the Defendant" and that this violated the FLSA. (Doc. 21 at 15). Cooperman further states that "if the Defendant was going to deduct hours not worked from [the p]laintiff's paycheck, then [it] would be obligated to pay him for the overtime hours he worked." (*Id.*).

Pursuant to 29 C.F.R. § 541.118, subject to certain exceptions, a salary employee "must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.118(a) (2001). One of the exceptions provides that "[d]eductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident." 29 C.F.R. § 541.118(a)(2) (2001). If deductions are taken from his salary when the employee is absent for a day or more for personal reasons, "his salaried status will not be affected." *Id.* Therefore, since Cooperman requested to be off work for Labor Day because he felt there was no reason to work because customers were going to be closed that day (Cooperman at 112), the defendant's deduction from Cooperman's paycheck for these eight hours of pay was not inappropriate under the FLSA. His decision was not pre-approved and it could be considered an absence for personal reasons. His salaried status was not affected by this single event.

8

Assuming, *arguendo,* that the Labor Day deduction was not justified, this still would not constitute a violation of the FLSA under the circumstances. The FLSA provides:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. . . . On the other hand, where a deduction [that is] not permitted . . . is inadvertent, or is made for reasons other than lack of work, the exemption [from the minimum wage and maximum regulations] will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

29 C.F.R. § 541.118(a)(6) (2001). Since ABSCO reimbursed Cooperman for the wages during the Labor Day 1999 pay period when it was brought to Galbreath's attention, this exemption was not lost. This is particularly true in this case because the facts show that this type of deduction occurred only once during the plaintiff's employment and was immediately rectified when brought to Galbreath's attention.

Finally, regarding the deduction from Cooperman's salary for the last week that he was employed by ABSCO, 29 C.F.R. § 541.118(c) provides that a "[f]ailure to pay the full salary in the initial or terminal week of employment is not considered inconsistent with the salary basis of payment. In such weeks, the payment of a proportionate part of the employee's salary for the time actually worked will meet the requirement." 29 C.F.R. § 541.118(c) (2001). ABSCO was fully justified in paying Cooperman for only that portion of his final week that he actually worked. Therefore, summary judgment is appropriate as to Cooperman's FLSA claims.

## IV. AADEA ANALYSIS

The Alabama Age Discrimination in Employment Act (AADEA) prohibits an employer from discharging an employee because of his age if he is at least 40 years of age. "[B]ecause it is

9

self-evident that the AADEA's purpose and prohibition are like the ADEA's, . . . it follows that the [] principles [that the 11th Circuit has adopted for ADEA cases] should govern in AADEA cases as well." *Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001) (footnote omitted). A plaintiff may establish a *prima facie* case of age discrimination by (1) providing direct evidence of discriminatory intent by the defendant, (2) presenting statistical proof of a pattern of discrimination by the defendant, or (3) providing other circumstantial evidence.

To establish a *prima facie* case of age discrimination based on circumstantial evidence the plaintiff has the burden to prove: (1) that he is a member of the protected group; (2) that an adverse employment action was taken against him; (3) that he was treated less favorably than otherwise similarly situated employees or replaced by or lost the position to someone "substantially younger;" and (4) that he was qualified for the position for which he was rejected. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc); *Munoz v. Oceanside Resorts, Inc.*, 223 F.3d 1340, 1347-48 (11th Cir. 2000); *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1359 (11th Cir. 1999), *cert. denied*, 529 U.S. 1109, 120 S. Ct. 1962, 146 L. Ed. 2d 793 (2000); *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 656-67 (11th Cir. 1998). Under the familiar *McDonnell-Douglas* framework, once the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to respond with a legitimate, nondiscriminatory reason for its actions. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998), (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973). Once the defendant meets its burden of production, the plaintiff is afforded an opportunity to

demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Combs*, 106 F.3d at 1528.

"[S]ummary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a *prima facie* case." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1433 (11th Cir.), *cert. denied*, 525 U.S. 962, 119 S. Ct. 405, 142 L. Ed. 2d 329 (1998). Since the defendant challenges whether Cooperman has established a *prima facie* case of age discrimination, the court must address the same before the burden shifts to ABSCO to assert a legitimate, nondiscriminatory reason for its actions.

Cooperman has not presented any direct evidence of discriminatory intent by ABSCO. Cooperman testified that neither Galbreath nor any other management employee of ABSCO ever made any comments about his age. (Cooperman at 78-79). Cooperman also confirmed that neither Galbreath nor any other management employee of ABSCO ever indicated that his age was a factor in anything that was done up until the point of his termination. (*Id.*). Cooperman has not provided any statistical evidence that shows a pattern of discrimination by ABSCO. Therefore, in order to establish a *prima facie* case of age discrimination, he must provide sufficient evidence of the four elements of age discrimination based on circumstantial evidence.

Both parties agree that Cooperman is within the protected group and that an adverse employment action was taken against him. The remaining elements, that he be replaced by a younger individual and his qualifications, are disputed. Cooperman has not provided any evidence that he was replaced by or otherwise lost the position to a younger individual. To the contrary, the record demonstrates that the position was not filled. (Galbreath at 52). The defendant asserts that the plaintiff "cannot show any other similarly situated employee to whom

11

he can compare himself." (Doc. 15, at 13).

The record is clear that the plaintiff was hired by Galbreath about six months before he was terminated. The plaintiff's position has not been filled. There is no evidence that similarly situated persons have been treated differently. All the sales persons, including Hall and Carter, were required to take the test. Everyone but the plaintiff passed at least one of the tests. This includes Hall, who was hired about the same time as the plaintiff. Although the first test was unexpected by the plaintiff, nothing in the record demonstrates that any of the other employees received notice that it was going to be given. The plaintiff was provided with the test and the answers so he could study the same. The plaintiff was given the second test after being told of his poor performance on the first. He was given the third test when he was the only employee not to pass either the first or second test. He was given a written warning that he would be terminated if his performance did not substantially improve. (Doc. 16, Ex. 9).

Viewing the disputed evidence in the light most favorable to the plaintiff, it is apparent that the plaintiff informed Galbreath that he had a migraine on the day of the third test, yet he was required to take it just the same. Under the circumstances, particularly where there had been two prior tests, the court does not find this to be sufficient to demonstrate the requisite *prima facie* case. Cooperman was aware of the potential safety hazards of the products sold by ABSCO and those that involved the use of natural gas or propane. Cooperman acknowledged that as a representative of ABSCO he had a duty to make sure that he knew the safety procedures. (Cooperman at 92). Cooperman further confirmed that the product tests given to the salespersons by ABSCO dealt, at least in part, with safety issues. (*Id.*). Cooperman testified that the pictures on the tests were pictures of products being sold by ABSCO, and that he had no

reason to believe that the scoring of the tests was not accurate. (*Id.* at 88). Accordingly, summary judgment is due to be granted.

The plaintiff's reliance on *Roberts v. Houston County Bd. of Education*, 819 F. Supp. 1019 (M.D. Ala. 1993), is misplaced. In *Roberts*, the plaintiff alleged that the defendant discriminated against him in failing to hire him as a math teacher. Roberts applied for the job having a bachelors degree and a masters degree in math and ten years mathematics teaching experience. *Id.* at 1021. A white female who recently received her bachelors degree and who had no prior teaching experience, other than three months as a student intern received the job. When Roberts inquired as to why he did not get the job, he was told that it was awarded to the "best qualified person." *Id.* at 1022. At trial before the judge, the defendants asserted that the plaintiff was rejected because of a negative recommendation from his prior employer. The evidence regarding the prior reference was less than compelling. The court found that Roberts was entitled to a judgment in his behalf, in part, because the defendant "violated its own employment policy (which was established to prevent exactly the kind of abuse that occurred in this case), and incorrectly applied the subjective criteria in a way which negatively impacted [Roberts]." *Id.* at 1028-29. In discussing the *prima facie* case, the *Roberts* court stated that "the evidence shows the plaintiff to be an extremely qualified teacher on the basis of objective criteria, and his qualifications go far beyond a borderline *prima facie* case." *Id.* at 1025.

*Roberts* is factually and legally distinguishable from the present case. Unlike Roberts, the plaintiff herein was not "extremely qualified;" he failed to pass the product information test three times. Even if the court excludes the last test because of the plaintiff's migraine, he still remains the only employee tested that was unable to pass. The plaintiff herein further acknowledges the

importance of being able to provide the customer with product and safety knowledge. (Cooperman at 93-94). The fact that the plaintiff felt that he could rely on other persons for that information (see Cooperman at 94) is no substitute for his lack of such knowledge.

Even were this court to find that he has established a *prima facie* case, the defendant has articulated a legitimate, nondiscriminatory reason for the termination. It asserts that he was terminated because of his lack of product knowledge and safety issues. (Doc. 15 at 16; Doc. 16, Ex. 1 at Ex. 12). To demonstrate pretext, the plaintiff notes that this was the first time such tests were ever used by the defendant; the plaintiff was "spending long hours on the road performing his duties," and therefore should have been given more time to prepare for the test; his job duties did not require that he "memorize" the defendant's product catalog; and the plaintiff excelled in outside sales, as demonstrated by an award he received. (Doc. 21 at 7-8).

In *Combs*, the court articulated the appropriate considerations:

> When deciding a motion by the defendant for judgment as a matter of law in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct," *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994) (citation omitted). The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Sheridan*, 100 F.3d at 1072 (citation and internal quotation marks omitted); *see also Walker*, 53 F.3d at 1564 (Johnson, J., concurring) (discussing methods of proving pretext). However, once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's *prima facie* case taken together with rejection of the employer's explanations for its action. At that point,

14

judgment as a matter of law is unavailable.

*Combs*, 106 F.3d at 1538.

The evidence is undisputed that a factory representative complained that the plaintiff and another salesman were not attentive during a training session. Additionally, it undisputed that other employees besides the plaintiff were given the tests. Finally, it is undisputed that the plaintiff failed the first two tests. There is no evidence that any of the other tested employees were given special consideration such as that requested by the plaintiff. For instance, no one was excused from any test because they were a top producer from some contest or for some specific period, no one was given additional time to prepare for any test beyond that afforded the plaintiff, and no one was singled out for favorable consideration. Particularly noteworthy is the fact that there is no evidence that the other sales persons were treated differently. Although Carter had been with the company a good bit longer, Hall had been with the company about the same length as the plaintiff. Hall passed the test and the plaintiff did not. Although the court is not impressed that the plaintiff was required to take the third test while suffering from a migraine, that is not "evidence sufficient to permit a reasonable juror to reject as spurious" ABSCO's explanation as to why the plaintiff was terminated. *Combs*, 106 F.3d at 1543.

To the extent that the plaintiff asserts that the defendant relied on subjective criteria in deciding to terminate him, the court finds that this lacks merit. The plaintiff states that "[a] defendant who relies on subjective criteria will subject itself to close scrutiny. *Lee v. Russell County Board of Education*, 684 F.2d 769 (11th Cir. 1982). The court finds that the basis for the termination, the lack of product knowledge and safety issues, is premised upon objective criteria–failing three tests that were given to the plaintiff. The test scores are capable of objective

analysis and are an appropriate basis for determining whether an employee is attentive during training sessions and whether he has sufficient product and safety knowledge. The plaintiff does not assert that the tests were skewed to single him out. To the contrary, the information on the tests came from the company's product catalog. This is borne out by the fact that the plaintiff noted in his deposition that Galbreath by publishing the test scores was "trying to embarrass [the plaintiff] into studying his catalog more."[6] (Cooperman at 90).

## V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS (OUTRAGE)

"To establish the tort of outrage, the plaintiff must prove three elements: '(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe.'" *Bell v. Eufaula City Bd. of Educ.*, 995 F. Supp. 1377, 1387 (citing *Moore v. Spiller Associated Furniture, Inc.*, 598 So. 2d 835 (Ala. 1992) (quoting *Perkins v. Dean*, 570 So. 2d 1217, 1219 (Ala.1990))). Furthermore, the Alabama Supreme Court has explained that "the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Bell*, 995 F. Supp. at 1387 (quoting *Thomas v. BSE Industrial Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993)). The Supreme Court recently stated:

> The tort of outrage was first recognized by this Court in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). In that case Inmon, who had formerly been employed as a claims supervisor by American Road Service Company, sued his former employer, alleging that he had been mistreated during the events

---

[6] To the extent that the plaintiff asserts that he was discriminated against during his employment by being required to take the tests and to the extent his score was published, the court finds that the defendant is entitled to summary judgment. In paragraph six of the complaint, the plaintiff asserts that he was "harasssed by [ ] Galbreath." (Doc. 1, ¶ 6). Specifically, he states that the test scores for all the sales people were distributed to cause him "embarrassment and humiliation" and that his performance was questioned even though he won a sales competition and outperformed the other sales people. (*Id.*). Nothing in the record demonstrates that the plaintiff was singled out for testing. To the contrary, additional sales and other employees were tested. The fact that the plaintiff won a sales contest a short time before his termination is not sufficient to excuse him from having to take a test to demonstrate product knowledge and safety awareness.

16

leading to his termination and that that mistreatment had constituted outrageous conduct; he argued that outrageous conduct should be recognized as a tort. In *Inmon*, this Court recognized such a tort. It discussed the requirements of the tort, emphasizing the extreme nature of the defendant's conduct that would be sufficient to constitute the tort, and the severity of the emotional distress that would entitle a person to recover for that tort:

> "The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [(Second) of Torts], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. [Cmt. d], Restatement, supra at 72."

The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989). *See also* Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law, § 23.0 (2d ed. 1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990) (citing *American Road Service Co. v. Inmon* ).

*Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).

Summary judgment is due to be granted concerning Cooperman's outrage claim for a number of reasons. First, the plaintiff's allegations do not fit any of the enumerated instances that would support an outrage claim. Second, the defendant's actions were not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," so as to permit this court to allow the claim to proceed to trial. *Potts*, 771 So. 2d at 465. Third, this claim is not addressed

in the opposition to the motion for summary judgment. In a motion for summary judgment, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. Therefore, the plaintiff's failure to provide any evidence to support a claim of outrage justifies summary judgment on his claims for intentional infliction of emotional distress.

## VI. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is granted in full. An order consistent with the findings and conclusions reflected in this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk is directed to serve a copy of this Memorandum Opinion upon counsel for the parties.

**DONE**, this the 20th day of December, 2001.

John Ott
**JOHN E. OTT**
United States Magistrate Judge